IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs May 12, 2020

**KATHY ALEXANDER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2015-A-793     Angelita Blackshear Dalton, Judge[1]**

_____

**No. M2019-01637-CCA-R3-PC**

_____

The Petitioner, Kathy Alexander, appeals the Davidson County Criminal Court's denial of her petition for post-conviction relief, seeking relief from her guilty plea to theft of property valued $60,000 or more but less than $250,000, a Class B felony, and her resulting sentence of twenty years as a Range III, persistent offender. On appeal, the Petitioner claims that she received the ineffective assistance of trial counsel and that her guilty plea was not knowing and voluntary. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Ryan Craig Caldwell, Nashville, Tennessee, for the appellant, Kathy Alexander.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Amy M. Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

In March 2015, the Davidson County Grand Jury indicted the Petitioner for theft of property valued $60,000 or more but less than $250,000, a Class B felony; forgery involving a value of $60,000 or more but less than $250,000, a Class B felony; violating the Tennessee Personal and Commercial Computer Act of 2003 involving a value of

_____

[1] Judge Dalton did not preside over the Petitioner's guilty plea hearing.

$60,000 or more but less than $250,000, a Class B felony;[2] and identity theft, a Class D felony. On March 15, 2016, the Petitioner signed a Petition to Enter Plea of Guilty, agreeing to plead guilty to the theft charge in exchange for a twenty-year sentence as a Range III, persistent offender, and dismissal of the other charges.

At the Petitioner's guilty plea hearing that same day, the trial court asked if she was suffering from any mental illnesses, and the Petitioner said she experienced "[a]nxiety attacks." The trial court asked if she was "taking medication for it" and if she understood "what we're doing here today," and the Petitioner answered both questions affirmatively. The trial court asked if the Petitioner was satisfied with trial counsel's representation, if she signed her plea petition freely and voluntarily, and if trial counsel went over the plea petition thoroughly with her, and the Petitioner answered yes to each question.

The State then gave the following factual account of the crimes:

[I]f the matter were to be tried, the State would expect to prove that the defendant, Kathy L. Alexander, was employed by the Tennessee State Museum, here in Nashville, Davidson County, between April 1, 2011 and January 31, 2014. Prior to that time, she had also worked at the state museum, initially as a temp-employee from Shared Services and later, being hired on full-time by the museum.

In January 2014, it was discovered that some of the charges that Ms. - Well I should say Ms. Alexander was involved in the billing and the finance section of the state museum.

In January of 2014, it was discovered that there were some irregularities in the accounts of the museum and investigation led to Ms. Alexander. She was placed on administrative leave on January 28, 2014. And the Tennessee State Comptroller was asked to come in and conduct an audit, which they did. The results of that audit showed that during the previous three years, Ms. Alexander had used two fictitious [vendors], in order to direct funds from the museum to a PO Box, which was in her name, located at the Arcade Post Office. And those two vendors whose names she used were Christopher Alexander, who is her son but was not a legitimate vendor of the state museum. The other individual was William Rasp, who was one of the primary vendors of the state museum. But Mr. Rasp lives in West Tennessee near Ripley, and he was completely unaware that some of

---

[2] The offense was captioned "Computer Theft by Fraud" on the indictment.

the invoices, under his name, were being paid to a PO Box in Downtown Nashville controlled by the defendant.

The audit concluded that Ms. Alexander had taken upwards of $52,000 through this fictitious invoice scheme directed to these two vendors. It also concluded that she had managed to rent a car on the State's dime under the We-Car program that the State operated with Enterprise Rental car. And that she had in fact driven this rental car at the expense of the State, for close to a year, resulting in thousands more dollars of charges.

There [were] some additional monies that were determined to have been converted by Ms. Alexander, all which amounted to over $60,000 total. And these events did occur in Davidson County, between April 1, 2011 and January 31, 2014.

Also the - as far as the sentence is concerned, Your Honor, the State has established through records check that Ms. Alexander has 10 forgery convictions from the Superior Court of Fulton County, Georgia, in the '90s.

She also has a felony, fraudulent use of a credit card conviction, from Davidson County Criminal Court, in 1997. And a theft over $60,000 conviction from Davidson County Criminal Court in 2003. Altogether, making her eligible for sentencing as a persistent offender as she is being sentenced under the plea agreement.

At the conclusion of the plea hearing, the trial court accepted the Petitioner's guilty plea to theft and sentenced her to twenty years as a Range III, persistent offender. The State dismissed the remaining charges.

In April 2017, the Petitioner filed a timely petition for post-conviction relief, claiming that she received the ineffective assistance of trial counsel and that she did not plead guilty knowingly, intelligently, and voluntarily. The post-conviction court appointed counsel, and counsel filed an amended petition, alleging that the Petitioner received the ineffective assistance of counsel because trial counsel failed to communicate with her adequately, failed to review discovery with her to ensure she understood the charges and potential defenses, failed to develop a defense theory, failed to hire an investigator, and failed to interview witnesses.

At the evidentiary hearing, the Petitioner testified that trial counsel was appointed to represent her and that she was in jail while her case was pending. Trial counsel met with her in jail two or three times and brought the State's discovery materials to their last

jailhouse meeting in September 2015. Trial counsel left the materials with the Petitioner and told her that he would discuss them with her at their next meeting. Trial counsel also told her that he had received permission to hire an investigator and that he wanted to talk with the investigator about trial strategy. The Petitioner had given trial counsel the names of witnesses, and trial counsel said he wanted to interview some of those witnesses. However, the Petitioner did not see trial counsel again until the day of her guilty plea in March 2017.

The Petitioner testified that she wanted trial counsel to talk with her therapist, who could have told trial counsel about the seriousness of her depression and anxiety. The Petitioner also wanted trial counsel to talk with Mary Jane Crockett Green and Louise Riggins Ezell, her "bosses" at the museum. Green and Ezell did not want the Petitioner to serve twenty or more years in prison, and the Petitioner wanted trial counsel to speak with them "to get a better clarification of [the Petitioner] and what really, what happened with [her]."

The Petitioner testified that the State kept making plea offers "with a higher percentage and more time." The State also "threatened [her] with career [offender status]" and claimed that she could receive a sixty-year sentence. The Petitioner was sixty years old and wanted trial counsel to convince the State to lower its offer because she did not know if she would "come out alive from TDOC." The Petitioner said that there was a "lack of communication" from trial counsel and that she could not telephone him. She wrote to him, and he wrote to her one time. The Petitioner never heard anything about a strategy or a defense, and trial counsel never reviewed the discovery materials with her.

The Petitioner testified that she kept asking trial counsel if he had talked with the State about her mental illness, if he had talked with any of her witnesses, and if he had talked with an investigator. She also asked him about his trial strategy but "heard nothing." The Petitioner learned about the State's twenty-year offer on the day of her guilty plea. Trial counsel told her that the State was not going to make a lower offer and that "you take this."

The Petitioner testified that in addition to her mental illness, she had a "digestive problem" on the day of her guilty plea. The Petitioner was not feeling well and had not had any sleep when she pled guilty. She said that she was taking Lithium for depression at the time of her plea and that she was not "fully grasping what was being said" at the plea hearing. The Petitioner did not remember the trial court's asking her if she was taking any medication that could affect her ability to understand the hearing. The Petitioner did not tell trial counsel that she was not feeling well because he was not listening to her.

- 4 -

On cross-examination, the Petitioner acknowledged that she pled guilty because she was guilty. She said, though, that trial counsel did not communicate with her or provide her with a defense. She said she thought she pled guilty as a "range IV" offender, not a Range III offender. However, she acknowledged that she received a twenty-year sentence, the lowest punishment in the range, for a Range III offender convicted of a Class B felony. She also acknowledged that the trial court could have considered consecutive sentencing if she had been convicted at trial. The State showed the Petitioner a copy of her plea petition. The Petitioner acknowledged that trial counsel went over the plea petition with her and that she initialed every paragraph of the petition.

Trial counsel testified for the State that he had been practicing criminal defense for twenty-two years, that he was appointed to represent the Petitioner, and that he negotiated her case with the assistant district attorney general. Trial counsel received discovery and gave a copy to the Petitioner. Trial counsel also received a copy of the State's notice of enhanced punishment. He said that he was "well aware" the Petitioner was facing a lengthy sentence and that he had "very strong concerns" about consecutive sentencing due to her criminal record. Trial counsel considered hiring an investigator. However, after speaking with either Green or Ezell, he thought the Petitioner's witnesses "went more towards mitigation and sentencing issues" than fact issues. Trial counsel decided not to hire an investigator because he "didn't really know what there was for them to investigate at that point."

Trial counsel testified that he thought the Petitioner "would almost certainly be convicted" if she went to trial. Therefore, his strategy was "to get her the best possible deal [he] could and to insulate her from the Court sentencing her." Trial counsel was concerned that if the trial court determined the Petitioner's sentence, the trial court would recognize that the Petitioner was a career offender and would order consecutive sentencing. Trial counsel "wanted to protect her from that." Trial counsel acknowledged that the Petitioner was facing a thirty-year sentence as a career offender if the jury convicted her of just one of the Class B felonies but that he was able to negotiate a guilty plea to one Class B felony in exchange for a twenty-year sentence to be served at forty-five percent release eligibility. Trial counsel went over the plea petition with the Petitioner and had her initial every paragraph of the plea petition. He said he would not have gone forward with the guilty plea if he had been seriously concerned about her competence.

On cross-examination, trial counsel testified that he did not remember the Petitioner's claiming that she did not feel well on the day of the plea. The Petitioner told trial counsel "from the beginning" that she had issues with depression and anxiety, and he knew she was taking medication. Trial counsel did not have any contact with the Petitioner's family, but he was in contact with the Petitioner's "life-long" friend, whom trial counsel also knew.

Trial counsel testified that the Petitioner pled guilty "certainly willingly." He said that she was not pleased or happy about the plea but that "I recall her being realistic and I recall . . . there being some degree of eagerness to getting this over with and her getting to where she was going to go." The Petitioner told trial counsel that because she was "older," she could help younger women in prison.

The post-conviction court filed a written order denying the petition for post-conviction relief. The post-conviction court noted that the Petitioner acknowledged initialing every paragraph of her plea petition and that the paragraphs showed trial counsel explained the elements of the charged offenses, that the Petitioner understood the evidence against her, and that trial counsel explained all possible defenses. The post-conviction court stated that although the Petitioner claimed trial counsel did not communicate with her or talk with her about any defenses, "the Court gives deference to what is indicated on the plea petition which indicates she understood the details of her case." The post-conviction court accredited trial counsel's testimony that he spoke with the Petitioner's witnesses and that he thought the witnesses would have been helpful at sentencing. The post-conviction court also accredited trial counsel's testimony that he decided not to hire an investigator because he did not think an investigator would be helpful and that his goal was to secure the best possible plea for the Petitioner due to the strong likelihood of conviction. Accordingly, the post-conviction court found that the Petitioner failed to show trial counsel rendered deficient performance. The post-conviction court also found that, in any event, the Petitioner failed to show that but for counsel's errors, she would not have pled guilty and would have insisted on going to trial.

Next, the post-conviction court addressed the Petitioner's claim that she did not plead guilty knowingly, intelligently, and voluntarily. Again, the post-conviction court referred to the Petitioner's plea petition. The court noted that the Petitioner initialed every paragraph, including a paragraph in which she declared that she was not under the influence of alcohol or drugs. The post-conviction court also noted that during the plea hearing, the trial court asked the Petitioner if she was suffering from any mental illness and if she was taking any medication and that the Petitioner answered yes to both questions. Finally, the post-conviction court noted that the trial court asked the Petitioner if she understood what she was doing and that the Petitioner responded yes. The post-conviction court concluded that the Petitioner failed to show she did not plead guilty knowingly, intelligently, and voluntarily.

## II. Analysis

The Petitioner claims that trial counsel was ineffective because he rarely met with her, never discussed a defense strategy with her, failed to hire an investigator, and did not

interview witnesses that could have been helpful in procuring a more favorable plea offer. She contends that she did not enter her guilty plea knowingly and understandingly because she was having digestive issues, was sleep deprived, and was unable to focus on the plea colloquy due to antidepressants. The State argues that the post-conviction court properly denied relief. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

As to the Petitioner's claim that she received the ineffective assistance of trial counsel, the post-conviction court accredited trial counsel's testimony that he spoke with the Petitioner's witnesses and that the witnesses would not have been helpful at trial. The post-conviction court also accredited trial counsel's testimony that he decided not to hire an investigator because he did not think an investigator would be helpful and that his goal was to secure the best possible plea for the Petitioner due to the strong likelihood of conviction. Although the Petitioner claims that trial counsel should have procured a more favorable plea offer from the State, the Petitioner was facing three Class B felonies and one Class D felony as a Range III, career offender but pled guilty to one Class B felony in exchange for a twenty-year sentence as a Range III, persistent offender. Twenty years was the lowest possible punishment in the range. See Tenn. Code Ann. § 40-35-112(c)(2).

Accordingly, we conclude that the Petitioner has failed to show that trial counsel was deficient or that she was prejudiced by any deficiency.

As to the Petitioner's claim that she did not plead guilty knowingly and understandingly, trial counsel testified that he went over every paragraph of the plea petition with the Petitioner and had her sign every paragraph. Our review of the plea petition shows that it contains twenty-two paragraphs and confirms that the Petitioner initialed each one. Those paragraphs included the Petitioner's affirming that trial counsel informed her of the evidence against her, that he explained all possible defenses to her, that she understood the charges against her, that she had not been pressured to plead guilty, and that she was satisfied with trial counsel's representation. Moreover, during the trial court's plea colloquy with the Petitioner, the trial court asked if she was suffering from any mental illnesses and taking medication, and the Petitioner said she was suffering from anxiety attacks and taking medication. The trial court asked if she understood "what we're doing here today," and the Petitioner said yes. The trial court had the Petitioner look at the plea petition, asked if she went over the plea petition with trial counsel, asked if she understood the plea petition, and asked if she signed the plea petition freely and voluntarily. Again, the Petitioner answered all of the questions in the affirmative. Thus, we conclude that the post-conviction court properly found that the Petitioner failed to show she did not plead guilty knowingly or understandingly. Accordingly, we conclude that the post-conviction court properly denied the petition for post-conviction relief.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE

- 9 -